UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA; and CALIFORNIA STATE LANDS COMMISSION, an agency of the State of California,<br><br>Defendants. | No. 2:18-cv-721-WBS-DB<br><br>MEMORANDUM AND ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT |

----oo0oo----

Plaintiff United States of America initiated this action against defendants State of California and California State Lands Commission ("Lands Commission"). It argues that a 2017 California law regulating the recording of conveyances of federal public lands in California ("SB 50") is invalid because it violates the United States Constitution's Supremacy Clause. Specifically, plaintiff argues both that the law runs afoul of the doctrine of intergovernmental immunity and that it is preempted by federal law. Defendants maintain that SB 50 is a

1

proper exercise of the state's right to regulate conveyances of land within its borders.

Currently before this court are plaintiff's and defendants' cross-motions for summary judgment. (Docket Nos. 20 & 24.)

I.  Factual and Procedural Background

California's SB 50 states that it is the policy of the State of California to "discourage conveyances that transfer ownership of federal public lands in California from the federal government." Cal. Pub. Res. Code § 8560(b)(1). California's Governor Edmund G. Brown Jr. signed SB 50 on October 6, 2017. (McVeigh Decl. Ex. 1 (Docket No. 20-2).) The law went into effect on January 1, 2018. (Id.)

A central mechanism through which SB 50 seeks to discourage conveyances of federal land is the requirement that, in order to record a deed or other documents related to the conveyance of federal land with a California county recorder, a grantee of federal lands must present a certificate of compliance from the Lands Commission. SB 50 also provides for a civil penalty of up to $5000 to be levied against any person who knowingly presents for filing with a county recorder a document related to the conveyance of federal land unaccompanied by a Lands Commission certificate of compliance. Cal. Gov't Code § 6223(a).

SB 50 defines "conveyance" broadly to encompass "any method, including sale, donation, or exchange, by which all or a portion of the right, title, and interest of the United States in and to federal lands located in California is transferred to

another entity." Cal. Pub. Res. Code § 8560(a)(2). It does not, however, apply uniformly to all conveyances of federal lands. There are six categories of conveyances for which the Lands Commission is required to waive its right of refusal and automatically issue a certificate of compliance. Cal. Pub. Res. Code §§ 8560(b)(2)(D)(ii) & (f).

Four of these categories were included in Section 8560(f) of SB 50, as originally enacted. They are: conveyances of federal public lands which the Lands Commission deems to be "routine;" conveyances of federal public lands pursuant to a conservation plan; the renewal of a lease that was in existence as of January 1, 2017; and the "conveyance of federal public lands to a federally recognized Native American tribe or lands taken into or out of trust for a Native American tribe or individual Native American." Id. § 8560(f)(3).

In June 2018, following the plaintiff's initiation of this action, California amended SB 50 with Senate Bill 854. That amendment established two new categories of conveyances for which the Lands Commission must automatically issue certificates of compliance. The first is conveyances of federal public lands to the State of California. Id. § 8560(f)(5). The second is:

> The conveyance of any federal public lands not managed by the federal National Forest Service, the federal Bureau of Reclamation, the federal Bureau of Land Management, the United States Fish and Wildlife Service, or the federal National Park Service unless the land conveyed satisfies any of the following:
>
> a. Is part of a national monument or national marine sanctuary.
> b. Contains national conservation lands.
> c. Is land placed in the National Register of Historic Places.

3

d. Is designated for preservation or
                       conservation uses.

Id. § 8560(f)(4). Conveyances of federal land that fall into any of the six above categories are automatically entitled to a certificate of conveyance from the Lands Commission. No timeframe is prescribed by statute within which the Lands Commission must complete these automatic certificate issuances. (Pl.'s Mot. for Summ. J. at 21 (Docket No. 20).) Lands Commission staff have never refused to issue a certificate of compliance when requested to do so. (Lucchesi Decl. ¶ 12 (Docket No. 24-3).)

Certificates of compliance are not automatically issued for conveyances of federal land that fall outside the categories enumerated above. Prospective purchasers in these conveyances may only secure a certificate of compliance from the Lands Commission if the commission is first provided with a right of first refusal or the right to arrange for the transfer of the federal public land to another entity ("refusal rights"). Additionally, under SB 50, conveyances of federal public land subject to this requirement are "void ab initio" unless the Lands Commission was provided with these refusal rights. Cal. Pub. Res. Code § 8560(b)(2)(A).

SB 50 requires the Lands Commission to evaluate its right of first refusal at a public hearing. Id. § 8560(b)(2)(C). These meetings occur approximately every other month. (Lucchesi Decl. ¶ 4.) To date, the Commission has declined to exercise its putative right of first refusal to purchase any federal public lands or arrange for their transfer to a third party. (Id. ¶

4

1  10.)

II. <u>Legal Standard</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

III. <u>Analysis</u>

   A. <u>Supremacy Clause</u>

The Supremacy Clause of the United States Constitution governs conflicts between state and federal laws. It provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby[.]" U.S. Const. Art. VI, cl. 2. The Supreme Court has interpreted the Supremacy Clause as meaning that, "the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government." <u>McCulloch v. Maryland</u>, 17 U.S. 316, 317 (1819).

This principle is known as the doctrine of intergovernmental immunity. Under this doctrine, a state law is invalid if it "regulates the United States directly or discriminates against the Federal Government or those with whom

it deals." North Dakota v. United States, 495 U.S. 423, 435 (1990).

Under the Supremacy Clause, state laws are also invalid if they are preempted by federal law. "There are two types of implied preemption: field preemption and conflict preemption." Whistler Invs., Inc. v. Depository Trust & Clearing Corp., 539 F.3d 1159, 1164 (9th Cir. 2008). Field preemption is implied when Congress "'so thoroughly occupies a legislative field' that it effectively leaves no room for states to regulate conduct in that field." Id. (quoting Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992)). Conflict preemption occurs when compliance with both federal and state law is impossible or when state law frustrates Congress's purpose in enacting a given federal statute. See Whistler Invs., Inc., 539 F.3d at 1164 (Conflict preemption analysis looks to "whether a party's compliance with both federal and state requirements is impossible or whether, in light of the federal statute's purpose and intended effects, state law poses an obstacle to the accomplishment of Congress's objectives.").

1. Intergovernmental Immunity

    a. Direct Regulation of the Federal Government

Defendants' argument that SB 50 does not directly regulate the United States' operations or property rests on a purported distinction between the conveyance of a given piece of real property and the recordation of a document related to that conveyance. SB 50, defendants argue, regulates the latter but not the former. (Defs.' Cross-Mot. for Summ. J. at 9.) In this account, SB 50 is merely an expansion of existing California law

governing all aspects of the title recording process.  Cf. Cal. Gov't Code §§ 27201 et seq.; Id. §§ 27279 et seq.; Id. §§ 27320 et seq.; Id. §§ 27360 et seq.

This argument is colorable with respect to those conveyances for which the Commission must automatically issue certificates of compliance.  There is certainty that the certificates will be issued in these cases (Lucchesi Decl. ¶ 12.) Given this, the regulation as it pertains to these conveyances is not categorically dissimilar from the preexisting requirements for title recordation under the California Government Code. Thus, with respect to conveyances automatically entitled to certificates of compliance, SB 50 is not an unconstitutional "direct regulation" of the federal government.

Defendants' argument that SB 50's title recordation requirements do not constitute a direct regulation of the United States' operations or property fails, however, with respect to those conveyances which are not automatically entitled to a certificate of compliance from the Lands Commission.  For these conveyances, the issuance of a certificate of compliance is conditioned on the extension of refusal rights to the Lands Commission.

Importantly, the question before the court is not whether defendants have, or will ever, in fact, directly regulate the United States via SB 50's refusal rights.  Rather, it is whether the law, as written, seeks to directly regulate the United States.  The court's analysis is legal, not factual.  For this reason, it is of no moment that the Lands Commission has yet to use the power delegated to it by SB 50 in a manner that

directly regulates the United States.  See <u>United States v. City of Arcata</u>, 629 F.3d 986 (9th Cir. 2010)(holding that two cities' promise that they would only enforce ordinances banning federal agents or employees from engaging in military recruitment to the extent the ordinances were consistent with federal law was irrelevant to the analysis of whether the ordinance violated the doctrine of intergovernmental immunity).

Defendants argue that their track record of implementing SB 50 in a manner that does not directly regulate the United States is relevant because, on its face, the law regulates purchasers of federal land, not the government itself. (Defs.' Reply Br. in Supp. of Cross-Mot. for Summ. J. at 3 (Docket No. 26).)  It is the purchasers who must secure a certificate of compliance from the Lands Commission before recording a conveyance and it is the purchasers who must, in certain circumstances, offer the Lands Commission refusal rights in order to get a certificate of compliance.  (Defs.' Cross-Mot. for Summ. J at 9.)  In support of this claim, defendants argue that "nothing prevents the legislature from structuring a right of refusal so that it primarily regulates the purchasers, rather than the United States."  (<u>Id.</u>)

Defendants are correct that a right of refusal may be imposed by statute.  It does not follow, however, that the legislature can structure a statutory right of refusal such that it can be exercised against a party that lacks an interest in the property at issue.  Nowhere in their briefing do defendants clarify how a purchaser of federal public lands could grant the Lands Commission a right of first refusal to buy or arrange for

8

the transfer of land owned by the federal government.

Even if it were possible for the legislature to craft such a right of first refusal, there is no evidence that the California legislature has done so in this case. The plain text of the statute lends no credence to this reading, and the Lands Commission's own interpretations of SB 50 have placed the onus on plaintiff, not on purchasers, to provide the refusal rights. For example, in a February 12, 2018 letter to the Bureau of Land Management regarding the conveyance of a parcel of land in Santa Barbara County, the Lands Commission wrote that "[t]o comply with state law and validly transfer the parcel, BLM must provide the Commission with the right of first refusal or right to arrange for the transfer of the parcel to another entity." (McVeigh Decl. Ex. 9 (Docket No. 20-2).) In this letter, the Lands Commission recognized what it now asks this court to deny: rights of first refusal, even those created by statute, are exercised against the owner of the real property at issue.

SB 50 may not expressly name the federal government as its intended object of regulation, but that does not mean the law does not directly regulate the United States. This direct regulation is most immediately evident in section 8560(b)(2)(A), which declares "void ab initio" certain conveyances of federal land if the Lands Commission is not first offered refusal rights to that land. The law's title recordation requirements also impose direct and intrusive, though perhaps less proximate, regulations on the federal government.

Title recordation is a significant and almost

9

inextricable component of the process of land conveyance.[1] As a result, conditioning purchasers' ability to record a title to recently acquired federal public lands on whether the government provided the Lands Commission with refusal rights in those lands trespasses on the federal government's ability to convey land to whomever it wants. The law subjects federal determinations about the conveyance of federal land to review by the Lands Commission; its refusal rights requirement and declaration that certain conveyances of federal land are "void ab initio" unless that requirement has been complied with appropriate for California the power to "directly obstruct the activities of the Federal Government." North Dakota, 495 U.S. at 437-38.

For these reasons, the court agrees with plaintiff that SB 50 unconstitutionally directly regulates the federal government with respect to the federal public lands managed by the federal National Forest Service, the federal Bureau of Reclamation, the federal Bureau of Land Management, the United States Fish and Wildlife Service, and the federal National Park Service, as well as with respect to those federal lands that meet the conditions enumerated in Section 8560(f)(4)(A)-(D). Accordingly, these portions of SB 50 unconstitutionally violate the doctrine of intergovernmental immunity.

>   b. <u>Discrimination against the United States and those with whom it deals</u>

---

[1] In California, nearly all grantees of real property record the deed instrument in the county in which the property is located. (Haase Decl. ¶ 23 (Docket No. 20-7).) Moreover, title recordation is often required by financial institutions and insurance companies considering providing financing or insurance coverage to a land owner with respect to a given property. Id.

Even if a regulation does not directly regulate the United States, it may still violate the doctrine of intergovernmental immunity if it discriminates against the United States or those with whom it deals. Discriminatory regulations are those that are not imposed on "similarly situated constituents of the State" and which have no "basis unrelated to the object's status as a Government contractor or supplier." North Dakota v. United States, 495 U.S. 423, 438 (1990). Importantly, even regulations that discriminate against those with whom the government deals may nonetheless survive if, "the inconsistency is directly related to and justified by significant differences between the two classes." Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 804 (1989)(citation and quotation marks omitted).

The statutory language of SB 50 makes clear that it applies only to purchasers and grantees of federal public lands: only those trying to record documents related to conveyances of federal public lands must present a certificate of compliance from the Lands Commission, and only they are subject to monetary penalties if they fail to do so. See Cal. Gov't Code § 6223(a). In United States v. California, 314 F. Supp. 3d 1077 (E.D. Cal. 2018)(Mendez J.), Judge Mendez considered the constitutionality of a California law that, among other things, imposed civil penalties on California employers that allowed federal immigration enforcement officials into nonpublic areas of their places of business. Judge Mendez found the penalties impermissibly discriminatory. They were, he ruled, a "clear attempt to meddle with federal government activities indirectly

by singling out for regulation those who deal with the government." Id. at 1096 (quotations and citation omitted).

Requesting a Lands Commission certificate of compliance to which one is automatically entitled may be a relatively minor inconvenience. It is, however -- like SB 50's threat of a $5,000 monetary penalty for attempting to record a document without a Lands Commission certificate of compliance -- a burden born exclusively by those who deal with the federal government. These aspects of SB 50 apply to all conveyances of federal public lands in California except those acquired by a federal agency through a foreclosure proceeding. Compare Cal. Pub. Res. Code § 8560(a)(3), with id. at § 8561. Like the monetary fine at issue in United States v. California, 314 F. Supp. 3d 1077, these recording requirements impermissibly discriminate against those who deal with the federal government by singling them out for discriminatory, if not particularly burdensome, regulation.

Defendants advance no argument that these aspects of SB 50 are constitutional. Accordingly, the court holds that SB 50, as it applies to the categories of conveyances listed in § 8560(f), violates the doctrine of intergovernmental immunity by discriminating against the land purchasers who deal with the United States.

Under SB 50, purchasers of federal lands to which California asserts refusal rights face an even greater burden than grantees in conveyances encompassed by § 8560(f). Because California may exercise a right of first refusal over the real property these purchasers seek to acquire, they face a level of uncertainty and potential delay that all others are spared from.

12

Defendants claim that the lands subject to SB 50's right of first refusal are of an especially sensitive nature and that they are therefore "not similarly situated to properties that might be sold by non-federal parties in California." (Defs.' Cross-Mot. for Summ. J. at 13.) Because SB 50's right of first refusal is related to and justified by this significant difference, defendants argue, it is constitutional. (Id. at 13-14.)

This argument assumes that some categories of federal land, e.g. those designated for conservation use or managed by the National Park Service, are categorically different from all other real property in California. In other words, the defendants implicitly argue that if a given piece of real property is part of a national monument or is managed by the Bureau of Land Management, its sensitivity and uniqueness are intrinsically greater than those of all other real property in California. The court rejects this supposition and, with it, defendants' arguments about the constitutionality of SB 50's right of refusal requirement.

Defendants may be correct that much of the real property encompassed by SB 50's refusal rights is qualitatively different from a typical residential or commercial real estate transaction. What they do not argue, and what they have not proven, however, is that there are categorical differences between the lands SB 50 subjects to a right of refusal and all other lands within California, including those of special historical, cultural, or natural value not owned by the federal government. Defendants come closest to making this argument with

13

the claim that federal lands are dissimilarly situated from all other lands in California because they are "preserved for the public's benefit, while privately held lands are not." (Defs.' Reply Brief in Supp. Of Cross-Mot. for Summ. J at 6.) This quality of federal public lands, however, is so directly linked to their federal status that it cannot serve as the basis for non-discriminatory differentiation.

Defendants' argument also fails because they have not shown that SB 50's right of refusal requirement is "related to" any distinguishing characteristics of the regulated lands as a class. The law does not, for example, enumerate a set of characteristics associated with "sensitive" or "unique" lands and then subject some federal lands to a right of first refusal because they meet the relevant statutory definition of "uniqueness." The law does not even apply broadly to all sensitive or unique lands preserved for the benefit of the public by any public or private entity, e.g., a trust or foundation. Rather, SB 50 uncritically uses federal administrative and institutional categories to target the federal government and those with whom it deals for regulation. For this reason, SB 50's right of first refusal requirement violates the Supremacy Clause by discriminating against purchasers of land who deal with the federal government.

2. <u>Preemption</u>

Plaintiff also argues that SB 50 is unconstitutional because it is preempted by federal law. Specifically, plaintiff argues that SB 50 both intrudes into a field reserved exclusively to Congress, i.e. the disposal of federal property, and directly

conflicts with federal laws authorizing the disposal of federal lands. Both plaintiff's field and conflict preemption arguments cite the Property Clause of the U.S. Constitution[2] and the Act for the Admission of the State of California ("Admission Act"), ch. 50 9 Stat. 452 (1850). The latter is particularly explicit in its circumscription of California's ability to legislate in the field of federal lands disposal. It provides that the state of California is admitted to the Union:

> upon the express condition that the people of said state, through their legislature or otherwise, shall never interfere with the primary disposal of the public lands within its limits, and shall pass no law and do no act whereby the title of the United States to, and right to dispose of, the same shall be impaired or questioned.

9 Stat. at 452. Regardless of whether or not there is a presumption against preemption, given the express language of the Property Clause reserving for Congress the power to dispose of federal lands and the Admission Act's explicit prohibition on California interfering with Congress's ability to dispose of federal lands, both of plaintiff's preemption arguments appear compelling. However, because the court finds that SB 50 unconstitutionally violates the doctrine of intergovernmental immunity, it need not reach the question of whether federal law preempts SB 50.

B. Remedy

1. Injunctive Relief

---

[2] The Property Clause of the Constitution states that, "Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." U.S. Cons. Art IV § 3, cl. 2.

15

Plaintiff's claim that SB 50 unconstitutionally regulates the United States is more than just speculation. The record before this court makes clear that SB 50, as implemented by defendant SLC, both directly regulates the United States by obstructing its operations, and discriminates against the United States and those with whom it deals. These injuries are "actual or imminent, not 'conjectural' or 'hypothetical.'" Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)(citing Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)).

While some of plaintiff's arguments about SB 50's unconstitutional direct regulation of the United States are largely speculative,[3] others speak to immediate and ongoing constitutional injuries suffered by plaintiff because of SB 50. Even where the United States has not conveyed or attempted to convey title to its lands, that property is still impermissibly regulated by SB 50's assignment of refusal rights in it to the SLC. Moreover, SB 50 directly regulates the disposal of federal land by clouding the United States' marketable title. (Id. at 24-25.) Section 8560(b)(2)(A) of the California Public Resources Code voids "ab initio" some conveyances of federal lands unless the SLC was provided with refusal rights in those lands. Given that the federal government has never provided the SLC with refusal rights, all conveyances of federal lands subject to SB 50's refusal rights requirement are arguably void ab initio under

---

[3] For example, plaintiff notes that "[i]f Congress were to authorize agencies to dispose of rights of first refusal, there would be apparently competing rights—thus impairing the federal agency's ability to carry out authorized activities." (Pl.'s Mot. for Summ. J. at 24.)

16

SB 50.  That the SLC issued certificates of compliance for these conveyances is of no moment here since the statute expressly conditions a conveyance's validity on the provision of refusal rights to the SLC, not on the issuance of a compliance certificate by the SLC.

As implemented to date, SB 50 has also actually discriminated against the United States and those with whom it deals.  For example, other than the plaintiff, no seller in a California real estate transaction has ever received a letter like the one the SLC sent the Department of the Interior, explaining that under SB 50 in order to "validly transfer [a 5.9 acre parcel of lands in Santa Barbara county], BLM must provide the [SLC] with the right of first refusal or right to arrange for the transfer of the parcel to another entity."  (McVeigh Decl. Ex. 9.)  Similarly, only grantees of federal land have had to deal with the hassle of requesting a certificate of compliance from the SLC or the threat of a $5,000 fine if they attempt to record a deed to their land without an accompanying certificate of compliance from the SLC.

Though the defendant SLC has never exercised its putative refusal rights, plaintiff has already been injured through the enforcement of SB 50: the statute's direct regulation of federal lands and their disposal, and its discrimination against the federal government and its grantees are ongoing. These unconstitutional harms to plaintiff are likely to persist as long as SB 50 is in force.  For these reasons, the court concludes that declaratory and injunctive relief are the appropriate remedies.

17

2.  <u>Severability</u>

Section 8560(g) of the California Public Resources Code states that "[i]f any provision of this section or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application."  Given the presence of such a clause, there is a presumption in favor of severability. <u>Santa Barbara Sch. Dist. v. Superior Court</u>, 13 Cal. 3d 315, 331 (1975).  That presumption can be overcome, however, if the invalid provision is grammatically, functionally, and volitionally inseparable from the remainder of the statute.  <u>Cal. Redevelopment Ass'n. v. Matosantos</u>, 53 Cal. 4th 231, 271 (2011). Here, Section 8560(b)(2)(A) of the Public Resources Code and Sections 223 and 27338 of the Government Code may be grammatically separable from the remainder of the law, but functionally and volitionally they are not.  The presumption in favor of severability is overcome and the court declines to sever any part of SB 50.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (Docket No. 20) be, and the hereby same is, GRANTED.  Defendants' cross-motion for summary judgment (Docket No. 24) be, and the hereby same is, DENIED.

The court DECLARES that SB 50 is unconstitutional because it violates the doctrine of intergovernmental immunity, and PERMANENTLY ENJOINS defendants from enforcing SB 50.

Dated:  November 1, 2018

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE